In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3041

WALLACE BURKS,

*Plaintiff-Appellant*,

*v.*

RICK RAEMISCH, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07-C-495—**William C. Griesbach**, *Judge*.

ARGUED JANUARY 8, 2009—DECIDED FEBRUARY 10, 2009

Before EASTERBROOK, *Chief Judge*, and EVANS and
TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Between September 2005 and
January 2007, Wallace Burks spent three stints at the
Milwaukee Secure Detention Facility. Burks has an eye
condition (a pinhole in the retina of his left eye) that
predates his imprisonment, and while free he was re-
ceiving treatment, which the prison did not continue. He
complained to physicians and nurses, who promised to
have his eye evaluated. They scheduled an optometry

evaluation in September 2006 and an ophthalmology consultation in November 2006 but did not carry through; Burks's condition was left untreated. He saw an ophthalmologist almost immediately after arriving at Dodge Correctional Institution in late January 2007. There he was told that his eye had healed improperly, leaving him with a permanent vision impairment. Degeneration of his vision could have been prevented had he received medical help during his time in the Milwaukee prison. (All of these facts come from the complaint, and for current purposes we accept them as true.)

Burks contends in this suit under 42 U.S.C. §1983 that seven persons, starting with the Secretary of the Wisconsin Department of Corrections and working down through its organization chart, are liable because they exhibited deliberate indifference to his serious medical need. See *Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976). The assumption underlying this choice of defendants—that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable—is a bad one. Section 1983 does not establish a system of vicarious responsibility. See *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. Burks omitted from his complaint the physicians and nurses who knew about his eye condition. Only two of the seven defendants—Aaisha Shakoor, head of the prison's medical unit, and Kelly Salinas, a grievance handler who received two of Burks's complaints—appear to have played

any personal role. And the district judge deemed the complaint insufficient even with respect to these two, because it did not lay out facts that would support an inference that they acted with deliberate indifference. We limit our attention on this appeal to Shakoor and Salinas, the only two defendants discussed in Burks's appellate brief.

Plaintiffs need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading. See *Erickson v. Pardus*, 551 U.S. 89 (2007). Knowledge and intent, in particular, need not be covered in detail; Fed. R. Civ. P. 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." It is enough to lay out a plausible grievance. A prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted—if it names the persons responsible for the problem. Doing nothing *could* be simple negligence, but it does not stretch the imagination to see that it might also amount to deliberate indifference.

Burks's complaint does not say that he ever spoke with Shakoor or explain how she came to know of his eye condition. But it put Shakoor on notice of the claim's nature and, as knowledge and intent may be pleaded generally (which is to say, in a conclusory fashion), the lack of detail does not permit dismissal. It may be possible to show through discovery that the physicians and nurses to whom Burks spoke reported to Shakoor

on his condition, and that Shakoor rather than the other members of the health unit made the decision to leave the condition untreated. See *Cooper v. Schriro*, 189 F.3d 781, 783–84 (8th Cir. 1999). Because Salinas told the health unit to send Burks to an ophthalmologist in January 2007 (more on this below), it is likely that Shakoor learned of this directive—though perhaps by then it was too late to take effective steps. Burks can't be sure what Shakoor knew, and what directions she gave, without the benefit of discovery. The district court must reinstate the claim against Shakoor and permit Burks to take discovery. (In dismissing the complaint, the district judge may have been under the misapprehension that Shakoor was one of Salinas's colleagues in the grievance-processing unit, rather than the head of the medical unit.)

Salinas was responsible for initial decisions on grievances submitted through the prison's complaint procedures. She handled two of Burks's grievances. The first, submitted on November 8, 2006, is not in the record, but a copy of Salinas's response accompanied the complaint. Salinas wrote that she understood the grievance to concern medical issues that Burks had experienced in 2005, and she summarily rejected that grievance as untimely, given the prison's 14-day limit. Burks submitted a second grievance on January 1, 2007. Salinas understood this one to protest the lack of any eye examination in December 2006. She obtained Burks's medical file, learned that he had not been seen by an eye specialist even though such an exam twice had been recommended by the prison's medical personnel, and sustained his grievance. Salinas wrote a memorandum

to the medical unit directing its "managers to ensure that the medically ordered treatment is followed up on." Salinas's memo did not have any effect, but it is hard to see how Burks could blame the medical unit's inaction on her, let alone contend that she displayed deliberate indifference to his medical needs. See *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008).

It is Salinas's decision in November 2006 that Burks now assails. He tells us that he alerted Salinas to his medical needs, to which she displayed deliberate indifference by rejecting his complaint as untimely without investigation. We think, to the contrary, that Salinas's decision manifests only attention to her role in the prison's operations. Salinas was a complaint examiner, not a physician or nurse, and one duty of a complaint examiner is to dismiss untimely grievances. Dismissal no more manifests "deliberate indifference" to the underlying problem than does a judge's decision dismissing a §1983 suit as barred by the statute of limitations. We would not say: "the judge violated the Constitution by refusing to redress the prisoner's grievance, but absolute immunity prevents a remedy." We would say instead that the judge acted correctly by enforcing the statute of limitations.

Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient perfor-

mance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. See *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993). That is equally true for an inmate complaint examiner. See *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006).

One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. See *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable. See *Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003); *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). But Burks has not accused Salinas of refusing to do her job and of leaving the prisoners to face risks that could be averted by faithful implementation of the grievance machinery. He

contends, instead, that Salinas should be held liable because she carried out her job exactly as she was supposed to. Burks does not contend that a 14-day time limit is unconstitutionally short—and, even if it were, a complaint examiner who applied the limit before a court declared it invalid would be entitled to qualified immunity from damages. Cf. *Cleavinger v. Saxner*, 474 U.S. 193 (1985). Public employees are not required, at their financial peril, to anticipate developments in constitutional law. See *Pearson v. Callahan*, No. 07-751 (U.S. Jan. 21, 2009), slip op. 18–20.

Burks's contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell*'s rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), shows that this rule applies to constitutional tort law, as to private tort law, for *DeShaney* holds that a public employee who knows about a danger need not act to avert it. As we remarked in *Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008), "there is an exception for the case in which [a public employee] is responsible for creating the peril that creates an occasion for rescue, as when, having arrested a drunken driver, [a police] officer removes the key from the ignition of his car, as a result stranding the passengers late at night in an unsafe neighborhood, and he does nothing to protect them". But Salinas did not create the peril facing Burks or do any-

thing that increased the peril, or made it harder for Burks (or anyone else) to solve the problem. The most one can say is that Salinas did nothing, when she might have gone beyond the requirements of her job and tried to help him. A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service.

So although the case is remanded for further proceedings concerning Shakoor, the judgment in favor of Salinas (and the five other defendants we have not mentioned) is sound. Burks contends that the district court should have allowed him to amend his complaint to add as defendants the physicians and nurses who actually balked his requests (or to add placeholder "John Doe" defendants until they can be identified). But he never asked the district court for leave to file such a complaint, and district judges are not required to solicit more litigation spontaneously. Burks can propose a suitable amendment on remand—or he could file an independent suit against the physicians and nurses, for a judgment in favor of people who did not cause Burks's injury cannot prevent a suit against those who did. See *Taylor v. Sturgell*, 128 S. Ct. 2161 (2008) (federal courts do not recognize a doctrine of virtual representation for the purpose of determining the extent of claim preclusion). The judgment is affirmed except with respect to Shakoor, and the case is remanded for further proceedings consistent with this opinion.