NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

## For the Seventh Circuit
### Chicago, Illinois 60604

Submitted October 24, 2012[*]
Decided October 30, 2012

Before

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 11-3005 <br><br> ANTHONY OLIVE, <br>  *Plaintiff-Appellant*, <br><br>   *v.* <br><br> WEXFORD CORPORATION, *et al.*, <br>  *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Western Division. <br><br> No. 11 C 50208 <br> Philip G. Reinhard, *Judge*. |

**Order**

Anthony Olive, a prisoner of Illinois, suffers from arthritis and back pain. (So he contends, and for current purposes we must accept all of his complaint's allegations.) A physician, who Olive identifies only as "Dr. Carter," treated these conditions with muscle relaxants and ibuprofen. Olive told Carter that other physicians had told him never to take ibuprofen, because it aggravates his peptic ulcer. Olive also told Carter that, in the past, abdominal binders (plus being allowed to sleep in a lower bunk) had alleviated his pain. To this Carter replied "so what?", told Olive that the prison did not have money for an abdominal binder and would not move him to a lower bunk, and insisted that Olive take ibuprofen. He tried it and experienced "unbearable intestinal distress."

---

[*] The appellees were not served with process in the district court and have not participated in this appeal. After examining appellant's brief and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

When Olive told Carter this, Carter threw Olive out of the office without reevaluating the counterproductive treatment.

Olive then sued Carter, Carter's employer (Wexford Corp., a medical-services provider to the Illinois Department of Corrections), and Dr. Louis Shicker, the Department's Medical Director, under 42 U.S.C. §1983. He accused all three defendants of violating the Constitution's eighth amendment (applied to the states by the due process clause of the fourteenth). The district court dismissed the complaint before allowing the defendants to be served with process, see 28 U.S.C. §1915A, ruling that Olive had pleaded himself out of court by admitting that Carter had supplied some treatment (the muscle relaxants and ibuprofen). If these were deficient, the judge thought, that might show malpractice but not deliberate indifference to a serious medical condition.

In reaching this conclusion, the district court overlooked the principle that a physician who *knows* that a potential treatment will make the prisoner worse off must not rely on that approach. See, e.g., *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Better no treatment than a harmful one. Olive alleges that Carter knew what ibuprofen would do to him (nonsteroidal anti-inflammatory drugs, including ibuprofen, aggravate peptic ulcers in many patients), said that he did not care, and refused to consider other options. That approach, if demonstrated by proof, would violate the cruel and unusual punishments clause. See *Farmer v. Brennan*, 511 U.S. 825 (1994).

Section 1983 does not create vicarious liability, however, see *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), so Wexford is not liable for Carter's acts unless they represent Wexford's own policy. Olive's complaint does not allege that Wexford has instructed its staff to administer drugs that make prisoners' conditions worse or to refuse to consider alternative treatments. The complaint instead asserts that Wexford "has a bi-coastal policy and practice … of denying prison inmates adequate medical care." That does not identify any concrete policy, let alone an unconstitutional one; it is more in the nature of an insult than the sort of allegation required by *Monell* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Doubtless Wexford has some cost controls in place, but Olive's problem as the complaint describes it comes from the administration of ibuprofen, not the non-use of an abdominal binder.

Dr. Shicker, the head of the prison system's medical hierarchy, also cannot be vicariously liable for Carter's acts. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009). The Court wrote in *Iqbal* that knowledge of a subordinate's misconduct is not enough. The supervisor can be liable only if he wants the harmful conduct to occur. *Id*. at 677. Olive does not allege that Shicker wants prison doctors to provide deficient or counterproductive medical care. He does contend that he complained to Shicker about Carter's decisions and that Shicker did not intervene to

help him. But both *Iqbal* and *Burks* hold that a supervisor is not liable just because a complaint is made and an effective solution is not forthcoming. We explained in *Burks*:

> [The] contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell*'s [and *Iqbal*'s] rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), shows that this rule applies to constitutional tort law, as to private tort law, for *DeShaney* holds that a public employee who knows about a danger need not act to avert it. As we remarked in *Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008), "there is an exception for the case in which [a public employee] is responsible for creating the peril that creates an occasion for rescue, as when, having arrested a drunken driver, [a police] officer removes the key from the ignition of his car, as a result stranding the passengers late at night in an unsafe neighborhood, and he does nothing to protect them". But [Shicker] did not create the peril facing [Olive] or do anything that increased the peril, or made it harder for [Olive or Carter] (or anyone else) to solve the problem.

555 F.3d at 596, with names changed to match these litigants.

The judgment is affirmed except with respect to Carter. The judgment is vacated and the case is remanded for further proceedings concerning Carter.