In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3894

DANIEL AGUILAR,

*Plaintiff-Appellant,*

*v.*

JANELLA GASTON-CAMARA, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cv-01273-NJ — **Nancy Joseph**, *Magistrate Judge.*

ARGUED APRIL 10, 2017 — DECIDED JUNE 28, 2017

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* The plaintiff, Daniel Aguilar, an inmate under the supervision of the Wisconsin Department of Corrections ("DOC"), filed a pro se complaint pursuant to 42 U.S.C. § 1983, alleging that beginning in October 2012 he was confined for 90 days without a hearing based on a purported violation of extended supervision. He argued that as a person who was released from prison on parole status rather

than extended supervision status, his confinement under the extended supervision provisions denied him the procedures that are afforded to parolees, in violation of the Due Process Clause, and violated his rights under the Eighth Amendment.

For offenses committed prior to December 31, 1999, offenders in Wisconsin are released from prison to "parole," whereas for offenses committed after January 1, 2000, the offenders are released to "extended supervision." Although the supervision for each status is essentially the same, there are nevertheless some legal differences between parole and extended supervision that dictate the punishments available for a given rule violation. Aguilar was convicted in 1996 and on February 23, 2010, he was released from prison on parole. Accordingly, after his release from imprisonment, Aguilar was subject to the parole provisions rather than the extended supervision restrictions. When Aguilar failed to report to his agent in violation of the rules of community supervision, his parole agent, Janella Gaston-Camara, completed a Violation Investigation Report in which she properly checked the box indicating he was on "Parole," and that form was signed by her supervisor Mya Haessig as well. On September 27, 2012, Aguilar was arrested by chance when the Racine Police Department SWAT team executed a search warrant on a bar allegedly being used for drug sales, and the officers found Aguilar in a room adjacent to the bar. On that day, Gaston-Camara completed an Order to Detain form in which she erroneously checked the box indicating that Aguilar was on "Extended Supervision," rather than the "Parole" designator. Aguilar subsequently met with Gaston-Camara and admitted to violating rules including absconding, moving without

notifying his agent, and consuming alcohol. When a person is under extended supervision, the agent, with a supervisor's approval, may order the offender confined for up to 90 days without a hearing if the offender signs a statement admitting to violating a rule of supervision. Initially, Gaston-Camara met with the supervisor, Mya Haessig, and agreed that a disposition short of confinement was the appropriate sanction, such as electronic monitoring or the imposition of additional conditions of supervision. Once they received information from the Racine Police Department that Aguilar was being charged with possession of THC and obstructing an officer, however, they convened again and concluded that confinement for 90 days was appropriate. They completed another form which included that recommendation, again erroneously identifying Aguilar as under extended supervision, and forwarded that recommendation to Lisa Yeates, the Regional Chief, who approved the sanction. Aguilar signed a statement admitting that he violated the rules of his supervision, and therefore the confinement was ordered without a hearing, based on the erroneous assumption that he was under extended supervision. Because he was not on extended supervision, however, he was not subject to that 90-day option, (although the law has since changed to allow imposition of a 90-day sentence on parolees for admitted rules violations, *see* Wisc. Stat. § 304.06(3g)). That did not necessarily work to his actual disadvantage. As a parolee, he would have been subject to formal revocation procedures; Gaston-Camara and Haessig confirmed that they would likely have sought revocation of parole based on those charges, with a likely revocation sentence of two years, rather than the extended supervision

sanction which resulted in his automatic confinement for 90 days. But such speculation as to which status would have been more advantageous is irrelevant to the claim before us.

On December 3, 2012, Aguilar's attorney, David Saldana, contacted Gaston-Camara and inquired as to why Aguilar's sanction began on October 17, 2012. One week later Saldana contacted Donna Harris, the assistant regional chief for Region 7, and asked her about the start date for the extended release sanction for Aguilar. In response, Harris emailed to Saldana language from the policy providing that an extended supervision sanction starts when the regional chief signs the sanction or within 10 days of apprehension, whichever is first. Subsequently, on December 21, 2012, Saldana contacted Yeates' regional office and requested that she amend the start date of his extended supervision sanction to start on October 7, 2012. Yeates ordered the amendment of the start date as requested.

Aguilar contends that in those conversations with Gaston-Camara, Harris, and Yeates, Saldana also questioned whether Aguilar was properly classified as under extended supervision. None of those defendants recall any such topic of discussion in those conversations. Gaston-Camara's written notes of her phone conversation with Saldana relate only that he asked about the starting date used to calculate Aguilar's sanction. The email to Saldana from Harris in response to their phone conversation relayed only portions of the DOC procedure for calculating the sanction dates. And Yeates' actions following the communication with Saldana addressed only the dates of the sanction. Finally, because Aguilar was assigned to Region 2, not Region 7, Harris stated that as assistant regional chief in

Region 7 she was not involved in overseeing Aguilar's supervision, and Aguilar has provided no evidence to the contrary.

To support his contention that Saldana apprised them of the classification error, Aguilar provided his own declaration to the district court. In it, he attested that Saldana visited him in jail and asked him why he was given an extended supervision sanction when he was a parolee, and promised to seek his release. Aguilar further stated that, subsequently, Saldana informed Aguilar that he had made several attempts over the past couple of weeks to contact some of the defendants but was unable to do so because they were not in the office, did not return his call, or were on vacation. According to Aguilar, Saldana said that he had informed Harris that Aguilar was unlawfully detained because the sanction was proper only for a person on extended supervision whereas Aguilar was on parole. According to Aguilar, Saldana then reported that Harris responded that Aguilar would not be released and that he was lucky his parole was not revoked. The district court refused to consider those declarations, as they were hearsay and Aguilar provided no statement or affidavit from Saldana.

Months after his release from the confinement on those violations, Aguilar was arrested on various charges. After a parole revocation hearing, the Division of Hearings and Appeals determined that Aguilar violated the conditions of his parole status and he was returned to Dodge Correctional Institution to serve his sentence. He received jail credit that included the time he had spent in jail in connection with the extended supervision sanction. The crediting of all of that time raises a question as to whether he suffered any actual injury as a result of the extended supervision sanction, but as neither the

parties nor the district court addressed the issue of the impact
of that crediting and the claims fail on other grounds, we will
limit our discussion to those other grounds.

Aguilar asserts that the failure to properly classify him as
on parole status rather than extended supervision, which
resulted in his confinement without a hearing, violated his
rights under the Due Process Clause and the Eighth Amend-
ment. As the district court properly recognized, § 1983 does not
establish a system of vicarious liability; a public employee's
liability is premised on her own knowledge and actions, and
therefore requires evidence that each defendant, through her
own actions, violated the Constitution. *Burks v. Raemisch*,
555 F.3d 592, 594 (7th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662,
676 (2009). Three of the defendants in this appeal held posi-
tions in the DOC's Division of Community Corrections Region
2: Gaston-Camara, Aguilar's probation and parole agent;
Haessig, the unit supervisor; and Yeates, the regional chief. The
other defendant, Donna Harris, was the DCC assistant regional
chief for Region 7. The district court granted the motion for
summary judgment as to all his claims against each defendant,
and Aguilar appeals to this court the summary judgment
determination.

We review the grant of summary judgment *de novo*,
considering all facts and reasonable inferences in favor of
Aguilar as the non-moving party. *Figgs v. Dawson*, 829 F.3d 895,
902 (7th Cir. 2016). We will affirm the grant of summary
judgment only if there are no genuine issues of material fact
and the defendants are entitled to judgment as a matter of law.
*Id.* Although we view the evidence in the light most favorable
to Aguilar, he nevertheless must present specific facts showing

that there is a genuine issue for trial; "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

To succeed on his Eighth Amendment claim, Aguilar must provide evidence that he was subjected to punishment (here, additional incarceration) without penological justification and that the defendants acted with deliberate indifference. *Id.* at 721; *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). The actions that Aguilar challenges in this case are the designation of him as on extended supervision status and the refusal to correct the error. Aguilar acknowledges that the "central question" in this appeal is whether he has raised a genuine issue of material fact that the defendants were deliberately indifferent to the evidence that Aguilar was misclassified as an extended supervision offender when he was in fact on parole and thus entitled to the procedural protections commensurate with that status. The district court properly concluded that Aguilar failed to establish any such issue of fact.

"To be considered on summary judgment, evidence must be admissible at trial, though 'the form produced at summary judgment need not be admissible.'" *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)(quoting *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010)). The only admissible evidence of deliberate indifference presented to the district court by Aguilar is that the forms ordering his detention and ordering the sanction, although identifying his as on extended supervision, also indicate his date of conviction which—if noticed—should have alerted them that Aguilar was a parole offender. As to the conflict between the date of conviction and

the box checked on the form that indicated he was an extended supervision offender, Aguilar presented no evidence that anyone noticed that discrepancy. In fact, Gaston-Camara and Haessig both submitted statements that they were unaware that he was on parole status and only became aware of the discrepancy when he filed the lawsuit. We are left with nothing more than mere speculation that any of the defendants might have noticed the disconnect between the date of his offense and the extended supervision status, and that is insufficient to survive summary judgment. As there is no evidence that the defendants responsible for the decisions were aware of the misclassification, at best the evidence demonstrates negligence in failing to properly identify his actual status.

If Aguilar had evidence that his attorney actually notified the responsible persons in this case, and they refused to correct the classification and afford him the appropriate due process, then his claim of deliberate indifference might survive summary judgment. But he failed to provide such evidence. First, he provided only his own affidavit setting forth what Saldana told him, and specifically that Saldana called Donna Harris, an Assistant Regional Chief for DCC Region 7 in Racine, and asked Harris to release Aguilar. According to Aguilar's affidavit, Saldana attempted to reach some of the defendants but was unable to do so. He eventually spoke with Harris and told Harris that Aguilar was unlawfully detained beyond the investigative detention period (5 working days) and was unlawfully detained on an extended supervision sanction as Aguilar was on parole and ineligible for such sanction. Aguilar's affidavit further provided that Saldana questioned Harris as to why the sanction added an additional 10 days to

confinement and Harris, after discussion, agreed to amend the sanction. The district court did not consider that evidence because it was inadmissible hearsay and therefore could not be considered on summary judgment. *See Cairel*, 821 F.3d at 830.

Aguilar argues that Federal Rule of Civil Procedure 56(d), which addresses summary judgment, specifically permits the court to "allow time to obtain affidavits or declarations," "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Aguilar has not pointed to any specified reasons for his failure to comply other than his lack of understanding of hearsay, but we are cognizant of the importance of ensuring that the judicial process not act as a trap to snare the unwary pro se litigant. Here, however, we need not consider whether the district court should have allowed Aguilar additional time to obtain an affidavit from Saldana, because even considering the evidence that Aguilar sought to include, summary judgment was proper.

In the briefs to this court, Aguilar's attorneys represent that they have spoken with Saldana and Saldana has confirmed that he would be willing to provide an affidavit and that the affidavit would confirm the characterization of his communication set forth by Aguilar. Even if we accept that as true and assume that the affidavit had been provided and mirrored Aguilar's characterization of the communication, the evidence does not establish that the defendants acted with deliberate indifference. The statements from Saldana that Aguilar sought to include reflected only a conversation between Saldana and Harris concerning the misclassification, and mentioned attempts to reach the other defendants with no indication that

any substantive communication occurred. There is no evidence at all that any communication between Saldana and Harris was ever communicated to the other defendants, and no evidence that Saldana directly informed any of the other defendants of the misclassification. Therefore, there is no evidence that those defendants were actually aware that Aguilar had been misclassified as on extended supervision, and their conduct in this case at best could be characterized as negligent, not deliberately indifferent. Only Harris was potentially aware of the misclassification, and that assumes that Saldana will submit an affidavit that corresponds to Aguilar's version of the conversation. But Aguilar provides no evidence that Harris played any role whatsoever in the decision to classify Aguilar as on extended supervision or the decision to impose the 90-day detention; in fact, Aguilar acknowledges that Harris had responsibility for an entirely different region of DCC.

Harris stated that Saldana called her asking about the start time for an extended supervision sanction and an email from Harris to Saldana is consistent with that recollection, in that Harris emailed Saldana portions of the DOC procedures dictating how the beginning and the end of extended supervision sanctions dates are calculated. Even if Saldana's affidavit would indicate that he also informed Harris that Aguilar was misclassified as on extended supervision, Aguilar presented no evidence that Harris had any responsibility or input into the classification of Aguilar or the imposition of the extended supervision sanction. In fact, the undisputed evidence is that Harris was responsible for an entirely different region, Region 7, and that the actors in the decision regarding Aguilar were Gaston-Camara, Haessig, and Yeates, who were also the

signatories on the forms that imposed the sanction. Gaston-Camara was Aguilar's parole agent, and she along with Mya Haessig, the unit supervisor, assessed Aguilar's infraction and recommended the revocation and detention. Lisa Yeates, the regional chief for Region 2, approved that recommendation and ordered the sanction. Harris was the assistant regional chief for Region 7 whereas Aguilar's supervision was under the authority of officials in Region 2. Aguilar presents no evidence or argument indicating that Harris had any input into the extended supervision sanction or any responsibility regarding Aguilar's supervision. In *Burks*, we rejected the notion that "everyone who knows about a prisoner's problems" will incur § 1983 liability. 555 F.3d at 595. We reasoned that "no prisoner is entitled to insist that one employee do another's job," and the division of labor is critical to the efficient functioning of the organization. *Id.* Accordingly, we held that "people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Id.* Even considering the proposed statement from Saldana, Aguilar has failed to demonstrate anything other than that an employee of a different region who was not involved in the decision and not responsible for Aguilar's parole supervision was informed of the mistaken classification. That is insufficient to survive summary judgment. The district court properly concluded that Aguilar failed to present evidence of deliberate indifference as to any of the defendants.

At best, Aguilar's evidence that the documents improperly listed him as under extended supervision, and that the dates of the criminal case—if considered—would have allowed defendants Gaston-Camara, Haessig, and Yeates, to deduce the

misclassification, allow an inference of negligence. But that is insufficient for both the Eighth Amendment and the Due Process claims. As stated above, the Eighth Amendment is violated by acts or omissions that exhibit deliberate indifference; mere negligence is insufficient. *Armata*, 766 F.3d at 721. Similarly, negligent conduct by a state official does not implicate the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 333–34 (1986); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015)("'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'")(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)); *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015)(same). Aguilar in his due process challenge asserts that the misclassification and the failure to correct it denied him procedural protections to which he was entitled. The district court denied the claim because it held that Aguilar's evidence supported only a claim of negligent conduct. As we discussed, the evidence even considering the proposed statement from Saldana, does not suggest more than negligence, and that is insufficient to support a due process claim just as it fails to support the Eighth Amendment claim. Accordingly, the district court properly granted summary judgment to the defendants.

The decision of the district court is AFFIRMED.