**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2018[*]
Decided September 26, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-1036

| | |
|---|---|
| RICHARD H. REDMAN, | Appeal from the |
| *Plaintiff-Appellant*, | United States District Court for the |
| | Eastern District of Wisconsin. |
| *v.* | |
| | No. 17-CV-239-JPS |
| LORI DOEHLING and | |
| CHRISTINE DIETRICH, | J.P. Stadtmueller, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Richard Redman, a Wisconsin prisoner, asserts in this suit under 42 U.S.C. § 1983 that two nurses at Redgranite Correctional Institution violated the Eighth Amendment and state law by delaying care for his painful foot problems. The district court denied his motions to recruit counsel and entered summary judgment for the defendants. Because nothing in the record suggests that either nurse recklessly disregarded Redman's foot condition, we affirm.

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We construe the record in the light most favorable to Redman. His first claim concerns the treatment of his painful bunions. To treat them, Dr. Jill Migon, a podiatrist outside the prison, recommended that Redman use wide athletic shoes with high tops when exercising. After Redman learned that these shoes were unavailable from the prison's approved vendor, he wrote to defendant Lori Doehling, a nurse who was the health-services manager at the prison. The note that she received from him in May 2015 asked only if they could meet to discuss the shoe order. His note did not state that the shoes were currently unavailable from the prison's vendor, and she replied that he should order from that vendor. The next month Redman started other medical treatment that prevented him from exercising for several months. Redman again raised the shoe issue with Doehling, who had the shoes purchased in September from another vendor before doctors cleared Redman to resume physical activity.

On appeal Redman contends that Doehling violated the Eighth Amendment because, he says, she recklessly ignored his medical needs by waiting until September to order the athletic shoes from an alternative vendor. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). But Doehling did not act recklessly. The record contains no evidence suggesting that before June Doehling knew that the shoes were unavailable from the prison's vendor. And after June Redman could not use exercise shoes for several months because of medical restrictions on his physical activity. It was therefore reasonable for Doehling to have the shoes ordered in September.

Redman's second claim concerns a painful degenerative condition in his right foot—hallux rigidus (literally, "stiff big toe"). This condition was treated and ultimately cured over the course of 18 months, during which Redman received two surgeries and 17 offsite visits with two podiatrists. Defendant Christine Dietrich, a nurse practitioner, referred Redman for almost all of these podiatrist appointments, logged his physicians' orders and recommendations, and sought authorizations for his recommended treatment. She did not schedule the appointments for Redman; scheduling was the responsibility of another staff member who is not a defendant. Days after Dr. Migon first recommended surgery on Redman's toe, Dietrich cleared him for it in mid-June 2015.

Redman asserts that his recovery from this surgery was unconstitutionally delayed in three respects. The first delay occurred after Dr. Migon performed the surgery in June. She wanted Redman to remain in a cast for only six to eight weeks, so she recommended a follow-up exam in late July to take x-rays and decide whether to remove the cast and have Redman use a removable boot. Dietrich referred Redman for

this exam. But the one-month follow-up exam was never scheduled. In late August 2015, about a month after the recommended time for the exam, Redman complained that the cast was still on his leg. In turn Dietrich immediately referred Redman to have the cast cut, and it was removed a day later. Redman eventually met again with Dr. Migon in October 2015. She gave Redman a shoe so that he could begin bearing weight to help the healing process. Dr. Migon wrote that the extra time in the cast kept him from bearing weight on his foot, causing bone shrinkage and incomplete joint fusion. She recommended follow-up, and Dietrich made referrals for Redman to see Dr. Migon again in November and December.

The second delay, which lasted a month, stems from a decision to get a second opinion about the next treatment for Redman. Dr. Migon determined in December that the bones in Redman's foot still had not fused. She recommended a bone stimulator and protein shakes twice a day to boost healing because Redman's soy-based prison diet offered limited protein. She also suggested eliminating some physical-activity restrictions. Under this plan she was "still optimistic" that "accelerating the bone healing" would lead to a "successful outcome." But in an email to the prison's medical director, Doehling, the health-services manager, worried about these recommendations. She wrote that lifting the restrictions on physical activity might "reinjure" Redman and that Redman "doesn't qualify by weight" for the protein shakes. The medical director responded, "I would disregard all these orders as they make no sense." He told Doehling to have another podiatrist provide a second opinion. The next day Dietrich referred Redman to a second podiatrist who agreed with Dr. Migon the following month.

After the second podiatrist concurred with Dr. Migon's plan, a third delay— lasting one week—occurred. Dietrich signed the concurring opinion but did not request the bone stimulator or protein shakes until a week later. She explained that she likely was busy with other unspecified work. Redman began receiving this remedial treatment within days of Dietrich's request. Dietrich referred Redman for two more appointments with podiatrists, and in May 2016 Dr. Migon opined that Redman needed revisional surgery, a probable outcome of nutritional deficiencies after the first surgery. Redman underwent revisional surgery and received protein shakes immediately afterward with bone stimulation a week later. He healed completely approximately eight months later.

On appeal Redman argues that Doehling and Dietrich violated the Eighth Amendment by causing these three delays, but no reasonable jury could conclude that

either nurse violated the Eighth Amendment. Prison officials violate the Eighth Amendment when they act with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference means that the official was aware of the inmate's medical needs and intentionally or recklessly disregarded them. *Farmer*, 511 U.S. at 837. Negligence—even gross negligence—is not deliberate indifference. *Id.*; *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Redman blames Dietrich for the first delay, which occurred when the one-month follow-up exam after his first surgery did not occur and the cast remained on his foot beyond the time that Dr. Migon recommended. He points out that Dietrich knew Redman needed a one-month follow-up exam to evaluate him for cast removal. But Dietrich did all that her job required her to do by timely referring Redman for this exam in July. She was not personally responsible for scheduling the appointments or transporting him to them. And she cannot be held liable under § 1983 for failing to do another prison employee's job. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). Finally, Dietrich's swift referral after she learned of the delayed cast removal undercuts Redman's argument that she was indifferent to his need to have the cast off.

Redman next contends that Doehling, the health-services manager, delayed his receipt of bone stimulation and protein shakes for a month by emailing the prison's medical director her concerns over Dr. Migon's treatment plan. An inexplicable delay in treatment may support an inference of deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). But the delay that followed Doehling's email was not inexplicable. As a nurse she was obliged to present to a responsible administrator any reasonable concerns over an "inappropriate or questionable practice." *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (citing Frank J. & Nancy M. Cavico, *The Nursing Profession in the 1990s: Negligence and Malpractice Liability*, 43 CLEV. ST. L. REV. 557, 613–16 (1995)). No evidence suggests that her concerns were medically unreasonable; to the contrary, the medical director agreed with them and asked for a second opinion, which Redman reasonably received within a month.

Redman next asserts that Dietrich violated the Eighth Amendment by waiting a week to arrange for protein shakes and the bone stimulator after the second podiatrist confirmed Dr. Migon's plan. But his argument has two fatal flaws. First, he has not offered evidence that this delay was intentional or reckless, as opposed to negligent. *See Farmer*, 511 U.S. at 837. Courts must examine the entire record of medical treatment, and an isolated incident of negligence is insufficient to support an inference of

deliberate indifference. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999). For almost a full year, Dietrich regularly referred Redman to outside podiatrists when needed and sought timely authorizations for other required treatment. In the context of that long-standing attentiveness, one short period of arguable negligence is not deliberate indifference. Second, Redman lacks evidence that this delay caused harm. By the time the second podiatrist concurred that Redman needed this treatment, Redman had already gone six months after surgery without it—though that was no fault of Dietrich's. No evidence suggests that the one additional week without protein shakes and bone stimulation caused Redman pain or exacerbated his toe condition. *See Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017). Thus no reasonable jury could find that this one-week delay caused harm for which Dietrich is liable.

Redman also contests the dismissal of his negligence claims against the nurses, but those claims fail also. His claim against Dietrich is barred because Wisconsin's medical malpractice statute, WIS. STAT. ch. 655, permits negligence claims against private "health care providers" but not against the nurses they employ. *See Patients Comp. Fund v. Lutheran Hosp.–LaCrosse, Inc.*, 588 N.W.2d 35, 44 (Wis. 1999). The claim against Doehling, who is employed by a state agency, fails because Redman did not present expert testimony stating that she violated her professional standard of care, as Wisconsin law requires. *See Olfe v. Gordon*, 286 N.W.2d 573, 576 (Wis. 1980). Redman replies that "even lay people would know that disregarding" orders of a physician "deviates from the standard of care." But Doehling did not disregard a physician's order. She *obeyed* the prison's medical director who instructed her to "disregard" Dr. Migon's orders and seek a second opinion.

Redman's final challenge is that the district court unreasonably denied his four motions to recruit counsel, given his sixth-grade education and reliance on a jailhouse lawyer who had prepared his court filings and inmate grievances. But the court's rulings were permissible. The court denied his first motion based on its fair conclusion that despite his limitations Redman could litigate his claims himself because they turned on historical facts as opposed to medical evidence. *See Pruitt v. Mote*, 503 F.3d 647, 655–56 (7th Cir. 2007) (en banc). After review of Redman's personally drafted correspondence with the defendants, the judge properly based this conclusion on his finding that Redman had "express[ed] himself coherently" and displayed "very good knowledge of his medical issues." *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014). Redman's second, third, and fourth motions did not develop any new arguments regarding his capability, and the judge reasonably denied them for that reason.

Redman also moves this court to amend his complaint and impose sanctions against Doehling for her representations to this court. We DENY Redman's motion as moot in light of the foregoing analysis.

We have reviewed Redman's remaining arguments, none of which has merit.

AFFIRMED.