**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 5, 2019[*]
Decided March 6, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 18-2478

| | |
|---|---|
| JOSHUA R. BELLA, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-C-1134 |
| ANTHONY MELI, ANN SCARPITA, and BELINDA SCHRUBBE, *Defendants-Appellees.* | Lynn Adelman, *Judge.* |

**O R D E R**

Joshua Bella, a Wisconsin inmate with a rare connective-tissue disorder, appeals the district court's entry of summary judgment for three prison officials—the security director and two former health-services managers—on his claims that they violated the Eighth Amendment by denying him adequate medical care and an accommodation for his medical condition. The district court concluded that Bella had partially failed to

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

exhaust his administrative remedies and failed to show that a reasonable jury could find that any defendant acted with deliberate indifference. We affirm.

Bella suffers from Ehlers-Danlos Syndrome Type 3—a condition that causes easy bruising and hyperextensible skin and joints and that all parties agree is complicated and difficult to treat. Medical staff at the Waupun Correctional Institution have treated Bella through genetic and blood testing, x-rays, an echocardiogram, physical therapy, and analgesic balm for his pain. They also have provided him with a transcutaneous electrical nerve stimulator (to prevent pain signals from reaching his brain), a cane, shoulder supports, and bracing for his wrists, elbows, ankles, knees, and clavicles. (Bella discontinued his physical therapy, and his doctor discontinued the nerve stimulator because Bella had tampered with it.) Bella also received consultations with off-site providers, including a University of Wisconsin orthopedist, who prescribed physical therapy but not medication. Bella has received various accommodations at the prison, including a light-activity restriction, an extra pillow, a low bunk, and a first-floor cell assignment to minimize stair use. He also has attention deficit disorder. His prison psychiatrist denied his requests for the particular prescription drugs that he requested, but prescribed duloxetine for depression, anxiety, and pain.

Two people served as managers of the prison's health services unit during Bella's incarceration. Neither was empowered to dictate how direct care providers (such as doctors and physical therapists) treated Bella; they managed nursing staff, provided administrative support, and monitored paperwork. And neither personally reviewed each of Bella's many health-services requests. When they did, they checked his medical file and determined that he was receiving appropriate care.

Two of these requests concerned Bella's difficulty passing through prison security checkpoints with his joint braces. He requested an accommodation whereby officers would scan him with a hand wand instead of requiring him to remove his braces for x-ray screening and walk through a metal detector. With the approval of the prison's special needs committee, one of the managers (who is a member of the committee) granted Bella's request. However, she later amended the accommodation to instead allow Bella to sit and remove one brace at a time because the security department raised concerns. (Bella had received a conduct report for hiding pills in his cane; he says he defeated this charge.)

Before eventually filing this suit, Bella wrote to and spoke with the security director about the checkpoint issue but did not file a formal grievance with the prison

administration. He did file a grievance about his medical care, claiming that it was inadequate. The grievance was denied, and Bella unsuccessfully appealed it.

Bella then filed this lawsuit under 42 U.S.C. § 1983 arguing that the two health-services managers and the security director violated his Eighth Amendment rights by failing to appropriately treat and accommodate his medical conditions. The district court entered summary judgment for the defendants. First, the court concluded that Bella failed to exhaust his intra-prison administrative remedies regarding the security-checkpoint accommodation claim against the security director. Second, it concluded that no reasonable juror could find that the health-services managers acted with deliberate indifference because Section 1983 does not establish a system of vicarious liability, and because they permissibly relied on the judgment of Bella's treating providers. The court also denied Bella's multiple requests for recruitment of counsel and motions to compel the defendants to allow him to copy unspecified medical records.

On appeal, Bella first argues that he did exhaust his administrative remedies regarding the security-checkpoint accommodation, as dictated by 42 U.S.C. § 1997e(a), because he followed the grievance procedure for his complaints about his medical care. He reasons that the accommodation is related to his medical care, so the grievance suffices to cover all of the claims he raised in his complaint. But the exhaustion requirement is strict. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The relevant grievance—alleging that health-services staff refuse to adequately treat him, causing his conditions to worsen—never mentioned security issues, and bypassing the grievance procedure by writing to or speaking with the security director does not satisfy the exhaustion requirement. *See* WIS. ADMIN. CODE § DOC 310.

Bella next complains that his treatments for Ehlers-Danlos Syndrome and attention deficit disorder were so inadequate that they amounted to "torture." But the health-services managers acted as administrators; they did not treat Bella and personally responded to only some of his health-services requests. They were entitled to rely on the medical judgment of Bella's treating doctors. *Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017). In any event, they cannot be vicariously liable for those doctors' alleged shortcomings. *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017). To the extent that Bella accuses them of being directly liable for failing to intervene, such a claim cannot prevail without an underlying violation of Bella's Eighth Amendment rights. *See Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004). But Bella, who did not sue his direct-care providers alleging that their treatment was constitutionally inadequate,

did not develop a record about the quality of his care. The record demonstrates a great *quantity* of medical treatment, though, and it was incumbent on Bella to submit evidence that the treatment decisions were "so far afield of accepted professional standards as to raise the inference that [they were] not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017) (prisoner "not entitled to dictate" doctor's treatment). Instead, he makes conclusory assertions lacking in any objective medical foundation. Without more, we could not conclude there was an underlying violation that either health-services manager knew about and failed to prevent.

Bella next challenges two sets of rulings that we review for abuse of discretion. *Hart v. Mannina*, 798 F.3d 578, 597 (7th Cir. 2015) (discovery rulings); *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc) (recruitment-of-counsel rulings). First, he argues that the district court should not have denied his motions to compel discovery. But Bella does not identify what documents he wished to copy or how they would assist his case, so he is unable to show that he suffered a substantial prejudice or that the court abused its discretion in denying the motions. *See Hart*, 798 F.3d at 597. Further, Bella never alerted the district court that he could not adequately respond to the defendants' motion without some specific additional discovery material to rely on. *See* FED. R. CIV. P. 56(f); *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000).

As for the district court's denial of Bella's motions for recruitment of counsel, the district court concluded that Bella's claims were not complex and, based on his filings, that Bella was competent to present his own case. Nothing in the record or in Bella's briefs convinces us that the district court abused its discretion in arriving at this conclusion. Bella argues that the district court's denial of many of his motions demonstrates his incompetence to represent himself, but competence of a litigant to try a case does not require that he succeed, and Bella does not state what a lawyer would have been able to do that he could not. *See Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) (restrictions relating "merely to [plaintiff's] status as a prison inmate" are relevant to "nearly every prison lawsuit" and do not necessitate recruitment of counsel). Because Bella has not demonstrated a reasonable likelihood that the presence of counsel would have made a difference in this case's outcome, *see Pruitt*, 503 F.3d at 659, we cannot conclude that Bella was prejudiced by the court's denial of his motions.

AFFIRMED