**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2021[*]
Decided March 25, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-2948

| | |
|---|---|
| KURT J. KEMP, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:18-cv-01855-JPH-TAB |
| ALEXANDER PLATZ, et al., *Defendants-Appellees.* | James P. Hanlon, *Judge.* |

**O R D E R**

Kurt Kemp, a 49-year-old Indiana prisoner, maintains that medical professionals at his facility ignored his spinal stenosis and history of "mini strokes." He filed this deliberate indifference action against a nurse, two doctors, and the prison's health-care services company. The district court entered summary judgment against him,

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

concluding that no jury could find that the defendants recklessly ignored his medical needs. We affirm.

Because this case was decided at summary judgment, we recount the facts in the light most favorable to Kemp, the nonmoving party. See *Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 913 (7th Cir. 2020). Before his incarceration at the New Castle Correctional Facility, Kemp was diagnosed with spinal stenosis; he also had suffered periodic mini strokes (transient ischemic attacks). At the time, he had been slated to discuss surgical options with a neurosurgeon, but he ended up only having chronic-care visits with New Castle's general practitioners.

At one chronic-care visit in early 2018, Kemp saw a prison doctor who did not regard his stenosis as serious enough to warrant a referral to a neurologist. This doctor also declined Kemp's request for a bottom-bunk pass, though several months later a pass was authorized by another health-care provider.

For later chronic-care visits, Kemp began seeing Dr. Bruce Ippel. At one visit in June 2018, Ippel referred Kemp to physical therapy for his neck pain and spinal stenosis. Kemp attended a couple of physical-therapy sessions, at which he demonstrated normal grip strength and an ability to exercise on his own, and so no further sessions were scheduled. At Kemp's next visit with Ippel the following month, Ippel watched Kemp walk independently with minimal pain. Believing that Kemp's mini strokes stemmed from a neurological condition, Ippel prescribed low-dose Prednisone and aspirin. Kemp contends that he did not receive these prescribed medications for 50 days, but Ippel denied being aware of this.[1] Ippel also said, based on his review of Kemp's earlier medical records, that surgery was not warranted.

Meanwhile, Kemp was being treated by nurse-practitioner Penelope Wadleigh for his mental-health needs. In late 2017, she prescribed Celexa for his depression and anxiety. When Kemp informed her later that his pain medication no longer was effective and that he was not receiving prescribed medications, she explained that he needed to submit request-for-healthcare forms for such non-mental-health-related

---

[1] Kemp asserts that the district court factually misstated the record by describing his withheld medications as "over-the-counter" rather than "prescription." But for our purposes the distinction is immaterial. The court correctly listed Kemp's prescribed medications elsewhere in its opinion as aspirin, low-dose Prednisone, ibuprofen, and naproxen. And the court's word choice did not affect its deliberate-indifference inquiry, which turned not on the nature of the medications but on the reasonableness of the defendants' treatment.

complaints. Wadleigh offered to email the pharmacy on Kemp's behalf (though the record does not reflect whether she did so). She also complied with Kemp's request to obtain his medical records from the clinic that formerly treated him, though she did not copy or scan those records.

Kemp brought this deliberate-indifference suit against Ippel, Wadleigh, and Wexford of Indiana, LLC, which provides healthcare services to prisoners at New Castle. (Kemp also sued Dr. Alexander Platz, who denied him a bunk pass, but he does not contest the entry of summary judgment in that doctor's favor, so we say nothing more about those claims.) He alleged, as relevant here, that Ippel, Wadleigh, and Wexford withheld his prescribed medications and mishandled his medical records.

The district court granted the defendants' motions for summary judgment. Kemp, the court concluded, did not produce evidence that Ippel used anything but his professional judgment when he declined to prescribe medication stronger than Prednisone. Nor did Kemp point to facts to support an inference that either Ippel or Wadleigh was responsible for dispensing medication. Finally, the court found no evidence to reflect that Wexford had a policy or custom of indifference to patients not receiving their medications.

On appeal, Kemp contends that the district court ignored his evidence that Ippel acted with deliberate indifference. He points to the assertion in his affidavit that Ippel was New Castle's chief medical officer—the implication being that the facility's head doctor must have overseen medication distribution and played a role during the 50 days Kemp went without medicine.

Kemp's affidavit, however, does not call Ippel's role into question. Ippel swore in his own affidavit that prescriptions at New Castle were filled by the nursing staff, and Kemp admitted at deposition that he was not sure whether Ippel was to blame for the 50-day gap without medication. Without evidence that Ippel was responsible for dispensing medications (or was even aware that Kemp was being denied medication), Kemp cannot show that Ippel acted with the reckless disregard necessary to form the basis of a deliberate-indifference claim. See *Farmer v. Brennan*, 511 U.S. 825, 834-39 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

Kemp next asserts that the court overlooked a statement in Ippel's affidavit acknowledging that he failed to review the medical records sufficiently. But this assertion mischaracterizes Ippel's affidavit, in which the doctor stated that he had "reviewed Mr. Kemp's records from Bluffton Regional Medical Center," but that they did "not indicate any need for surgery."

Kemp relatedly argues that the court disregarded a fact question about nurse-practitioner Wadleigh's level of care based on her failure to scan his medical records from his former clinic. That she did not scan his records after obtaining them, however, is beside the point; she was treating Kemp only for mental-health needs and was not required to investigate his other medical needs. See *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job.")

We have considered Kemp's remaining arguments, and none has merit. We therefore AFFIRM the judgment of the district court.