In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1220

JAMES A. LEWIS,

*Plaintiff-Appellant*,

*v.*

ANGELA MCLEAN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 14 CV 280 — **James D. Peterson**, *Chief Judge.*

ARGUED APRIL 20, 2017 — DECIDED JULY 21, 2017

Before MANION and ROVNER, *Circuit Judges*, and COLEMAN,
*District Judge.*[*]

ROVNER, *Circuit Judge.* James Lewis, a Wisconsin prisoner,
claimed in this action under 42 U.S.C. § 1983 that staff at the

---

[*] The Honorable Sharon Johnson Coleman, of the Northern District of
Illinois, sitting by designation.

Wisconsin Secure Program Facility violated the Eighth Amend-
ment by delaying medical attention for a painful back condi-
tion and then using excessive force when eventually taking
him to the hospital. Lewis also claimed that two of the defen-
dants, a nurse and a physician, committed malpractice under
state law. The district court granted summary judgment for the
defendants on the constitutional claims and relinquished
supplemental jurisdiction over the state-law claim, and Lewis
appeals. We conclude that a jury reasonably could find that
two of the defendants were deliberately indifferent to Lewis's
serious medical need.

## I.

The facts are largely undisputed, and we recount them, as
we must at this stage of the proceedings, in the light most
favorable to Lewis, noting disputes where relevant. In Febru-
ary 2014, Lewis was an inmate in the Wisconsin Secure
Program Facility in Boscobel, Wisconsin. On February 8, he
woke up at approximately 5:15 a.m. and experienced a sharp
pain shooting from the base of his neck to his tailbone when he
attempted to get out of bed. On account of the pain, he could
neither lie back down or stand up. He remained immobilized
by pain until approximately thirty minutes later, when at 5:39
a.m., he leaned forward just far enough to press the emergency
call button on the wall of his cell. Lewis was housed in segre-
gation (the reason is not disclosed in the record and when
asked at oral argument the state did not know), and the guard
who answered the call looked at the live video feed from the
security camera in Lewis's cell and saw him sitting on the bed.
The guard asked what the emergency was, and Lewis replied

that he was suffering from extreme pain in his back that left him unable to move.

The guard relayed this information to Lieutenant Joseph Cichanowicz, a security supervisor. After some time passed, Cichanowicz went to Lewis's cell, where Lewis explained that he was in terrible pain and could not stand up or lie back down. Lewis told Cichanowicz that he needed a nurse. After another ten or fifteen minutes passed and no nurse appeared, Lewis carefully eased himself forward again to push the emergency call button and request medical assistance. Sometime thereafter, Cichanowicz visited Lewis's cell with Nurse Angela McLean. According to McLean's progress report, she visited Lewis's cell at approximately 6:05 a.m., although in her answers to interrogatories she claimed that she went to his cell at 6:30 a.m. When Lewis saw McLean he told her that he was experiencing "terrible pain in his back" and "couldn't move." Prison policy discourages staff from examining an inmate in his cell, so McLean told Lewis that guards would escort him to the infirmary after head count, which was typically conducted at 6:15 a.m. McLean and Cichanowicz added, however, that Lewis would first have to stand with his back to the cell door so that he could be cuffed from behind through a slot in the door. Lewis again told them that he was in terrible pain in his back and neck and that he could not move or stand. Cichanowicz replied that he must be able to stand because he had pressed the emergency call button. Lewis then demonstrated that he could lean forward slightly to press the call button, and told them yet again that he was unable to stand or move.

Cichanowicz warned Lewis that if correctional officers had to be sent into the cell without first shackling Lewis that they would throw him to the ground and cuff him from behind, but that if he would come to the cell door they could cuff him from the front through the slot in the door. When Lewis replied that he was unable to stand or to reach the slot, Cichanowicz told him to get on his knees and crawl to the door. Lewis again told them he was in severe pain and unable to move. McLean reiterated to Lewis that if he wanted help he needed to follow Cichanowicz's orders, and then they walked away. The head count occurred as scheduled at approximately 6:15 a.m., but no one came to check on Lewis or take him to the infirmary.

After Cichanowicz and McLean left Lewis's cell, Cichanowicz viewed the video footage from Lewis's cell. Around 6:40 a.m., Cichanowicz told McLean that Lewis had not moved from a seated position on his bed since 5:15 a.m., but she still did nothing. Close to an hour later, Sergeant Wayne Primmer heard from other staff that Lewis was complaining about being in pain and unable to stand. Primmer checked the live video feed from Lewis's cell and saw him edge himself off the bed, fall to the floor on his knees, and then fall over onto his side on the floor. Lewis then cried out and pulled a blanket over himself. Primmer contacted Lieutenant Joni Shannon-Sharpe and briefed her about Lewis's earlier encounter with Cichanowicz and his continuing complaints of pain and inability to stand or walk. Primmer added that Lewis now was lying on the floor.

Shannon-Sharpe went to Lewis's cell at approximately 7:30 a.m. Like Cichanowicz, she told Lewis that guards could not enter the cell to take him to the infirmary unless he was

restrained. Lewis repeated that he could not reach the door because of excruciating pain in his back, and also told her that Cichanowicz told him no one would help him unless he crawled to the cell door and that being on the floor was increasing his pain. Shannon-Sharpe then conferred with McLean, and someone (we are not told who) directed McLean to contact the on-call physician, Dr. Meena Joseph.

McLean telephoned Dr. Joseph around 7:40 a.m.—over an hour and a half after Lewis had told her and Cichanowicz that he was in severe pain and could not move. Dr. Joseph directed that Lewis be taken to a hospital, and Shannon-Sharpe gathered five guards, two of them with medical training, to transport Lewis. They entered his cell at 7:58 a.m., restrained him, placed him in a wheelchair, searched him with a hand-held metal-detector (after abandoning the effort to force him into a standing position for a search when Lewis screamed that they were causing him extreme pain), lifted him into a van, and drove him to a local hospital. Lewis was admitted to the emergency room at 8:53 a.m. Doctors gave him morphine for his back pain, Ativan for his agitation, and diagnosed him with muscle spasms of the neck and upper back and myalgia (muscle pain). An hour later, Lewis was able to stand and walk again. He was prescribed ibuprofen and a muscle relaxant, and was discharged from the hospital at 10:24 a.m.

Lewis filed this suit two months later, naming as defendants Lieutenants Cichanowicz and Shannon-Sharpe, Nurse McLean, Dr. Joseph, and the five guards who removed him from his cell. He claimed that all of the defendants had shown deliberate indifference to his severe back pain by delaying his access to medical care, and that Shannon-Sharpe and the five

guards had been indifferent to his pain because they restrained him and did not take him to the hospital on a stretcher. Lewis also claimed that Shannon-Sharpe and the guards had used excessive force when cuffing him and transporting him to the hospital. Additionally, he asserted state-law medical malpractice claims against Nurse McLean and Dr. Joseph.

During discovery Lewis asked the district court to recruit counsel. The court declined after expressing doubt about the complexity of the medical issues and noting that Lewis had "not shown that the legal and factual difficulty of the case actually exceed his ability to prosecute it." Although Lewis obtained his medical records and the incident reports from February 8, he encountered difficulty getting the video from that day. He asked for "[a]ll video footage of the Plaintiff in his cell on February 8, 2014," but the defendants released only twenty-four minutes of clips run together into a single file, which Lewis could watch by contacting the prison's complaint examiner. The first eighteen minutes show snippets of what occurred in the cell between 7:12 and 8:00 a.m., including Lewis sliding off his bed to the floor; the last six minutes show Lewis being removed from the cell.

Lewis moved to compel discovery, explaining that he believed additional video evidence existed because of a notation Nurse McLean had written in her treatment notes from February 8. According to that notation, Cichanowicz had called her at 6:40 a.m (thirty minutes after she and Cichanowicz had met with Lewis) and said that recorded video from his cell showed Lewis sit up "from lying position" at 5:15 a.m. and "then not move again" except when "leaning forward to push intercom button." In response, their lawyer insisted

that the defendants were "not in possession of any other video evidence depicting Lewis on the date of the subject incident." The defendants later submitted a declaration from Douglas Konichek, who maintains the prison's video-monitoring system, explaining that the in-cell cameras do not record sound and "do not record during times when there is no movement." According to Konichek, the prison's digital video recorders automatically overwrite the oldest recording on the hard drive "when the drive's storage capacity is reached, and thus all recordings are overwritten unless someone downloads a recording … and saves it on a separate database." Konichek is not specific in the declaration about the storage capacity of the hard drive but does state that the "earliest recordings" available when the declaration was filed were from 20 days earlier. His declaration does not explain why the prison saved video of Lewis's removal from his cell but not video covering the time frame referenced in McLean's treatment notes—video apparently showing Lewis sitting immobile for nearly 25 minutes before he managed to reach the emergency call button.

Before the district judge ruled on the motion to compel or Lewis's renewed motion for counsel, the parties filed cross-motions for summary judgment. Lewis relied on documents obtained during discovery, including incident reports, responses to interrogatories, and McLean's treatment notes, along with his verified complaint (the equivalent of an affidavit for purposes of summary judgment, *see* 28 U.S.C. § 1746; *Devbruw v. Gallegos,* 735 F.3d 584, 587 (7th Cir. 2013)). In his complaint, Lewis explains that when he talked to Cichanowicz and McLean he was "sobbing and crying" because of his back pain and the "frustration of trying to get them to understand"

his need for medical care. Cichanowicz's response, avers Lewis, was to tell him to "crawl to the door" on his knees. At that point, Lewis says in his complaint, he "finally shouted, 'What part of I can't move don't y'all understand?'" Then, after Cichanowicz and McLean had departed and he realized he "would not get help," he "eased" himself from the bed to the floor "in the hope of being able to make it to the door." But once his knees hit the floor, Lewis recounts in his complaint, "the pain immediately increased" and he collapsed to the ground. Lewis emphasized Cichanowicz's admission in response to an interrogatory that he "could have instructed an emergency cell extraction" of Lewis at 6:00 a.m He did not do so, Cichanowicz insists in that response, because Lewis "did not appear to be in medical distress." Lewis also maintained that the guards who had transported him used excessive force because they restrained him, moved his limbs, made him stand up, and did not place him on a stretcher. And he argued that Nurse McLean and Dr. Joseph had committed medical malpractice by not ensuring that he was treated promptly and transported appropriately.

The defendants asserted that Lewis could not establish an Eighth Amendment violation based on deliberate indifference to a need for medical care because he lacked evidence of a serious medical need and because they were making "meaningful and reasoned decisions and following the institution policies and procedures that were designed to protect both the staff and inmates." The "undisputed evidence," according to the defendants, establishes that Lewis was not taken to the infirmary and treated when he first complained of pain only because he "refused repeated requests by the officers for him

to present his extremities to the cell trap doors." As evidence of this "refusal to be restrained," the defendant guards submitted declarations averring that they had seen him move his arms and legs.

Shannon-Sharpe and the defendant guards also contended that the force used in restraining and taking Lewis to the hospital was minimal and necessary. They submitted the six minutes of video of the cell extraction as evidence that ""the officers entered the cell in a calm and directed manner, and did not *'throw'* themselves upon Lewis or 'twist' or 'snatch' his legs" as he alleged in his complaint. As for the claim of medical malpractice, Dr. Joseph and Nurse McLean asserted that Lewis lacked expert testimony establishing the standard of care, which, in any event, they had satisfied.

Among the documents submitted by the defendants is an incident report by Primmer, the sergeant who alerted Shannon-Sharpe after seeing Lewis on the floor of his cell around 7:20 a.m. Primmer wrote that he "informed Lieutenant Cichanowicz of the situation," but Cichanowicz's declaration does not mention this. In his declaration, Cichanowicz does not deny watching the video recording of Lewis sitting in his cell from 5:15 to 6:40 a.m. (indeed, he fails to mention it at all); he also fails to mention that he called Nurse McLean and told her about it, as documented in McLean's treatment notes. Instead, Cichanowicz simply repeats in his declaration that he never ordered an emergency cell extraction because he "did not observe a medical emergency that required an emergency extraction." And in her declaration, McLean similarly avers that, after meeting with Lewis around 6:00 a.m., she "did not believe Lewis had an urgent medical need that required

emergency assistance." She, too, is silent about the account in her progress notes of the telephone call from Cichanowicz.

The district court denied Lewis's renewed request for counsel and entered summary judgment for the defendants. The court acknowledged that Lewis was in pain while restrained and transported, but reasoned that the undisputed evidence establishes that only "a modest amount of force" was used, and none of it was applied "maliciously or sadistically for the purpose of inflicting pain." The court further reasoned that, even if Lewis's back pain was a serious medical need, a jury could not reasonably find from the evidence "that defendants took longer than was necessary to assess plaintiff's medical issue and get him treatment" or that they "treated him unnecessarily roughly in restraining him." Finally, the district court relinquished supplemental jurisdiction over Lewis's claim of medical malpractice.

## II.

With the assistance of court-appointed counsel on appeal, Lewis now argues that summary judgment was inappropriate on his Eighth Amendment deliberate indifference claim and that the district court should have recruited counsel to assist him with obtaining necessary discovery to support that claim. Lewis has narrowed his arguments on appeal to focus primarily on his claim of deliberate indifference against McLean and Cichanowicz.

The Eighth Amendment's proscription against "unnecessary and wanton infliction of pain" is violated when prison officials demonstrate "deliberate indifference to serious medical needs" of prisoners—whether the indifference "is

manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. Thus, a prisoner must first establish that his medical condition is "objectively, 'sufficiently serious,'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and second, that prison officials acted with a "sufficiently culpable state of mind," *id.*, at 834 (citations omitted)—i.e., that they both knew of and disregarded an excessive risk to inmate health. *see id.* at 837; *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

As for the objective component, we conclude that there is enough evidence to support a finding that Lewis's medical condition—his muscle spasm and the accompanying back pain—was serious. A medical need is sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. Moreover, a "medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *see also Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The defendants no longer appear to be contending that Lewis's condition was not serious. We assume given the excruciating pain that Lewis described being in as well as the ultimate diagnosis of a muscle spasm treated with morphine that Lewis has established that he had a serious medical condition. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th

Cir. 2012) (concluding that plaintiff alleged serious medical condition by stating in complaint that "he was in pain" from wound he believed "was becoming infected").

We thus move to the question whether Lewis presented enough evidence of deliberate indifference to survive summary judgment. As discussed above, counsel for Lewis has wisely limited his deliberate indifference claim primarily to McLean and Cichanowicz . Any discussion of the remaining defendants in Lewis's brief is limited. In any event, we agree with the district court that a jury could not reasonably find that Lieutenant Shannon-Sharpe, Dr. Joseph, and the guards who transported Lewis from his cell were deliberately indifferent in assessing Lewis's medical condition or in restraining and transporting him to the emergency room. The evidence at summary judgment shows that Shannon-Sharpe immediately went to talk to Lewis after learning of his distress. Within ten minutes of her arrival, Dr. Joseph had been called and directed that Lewis be taken to the emergency room. Shannon-Sharpe then assembled a team of guards who restrained Lewis and transported him to the emergency room. These defendants' response to Lewis's distress was reasonable, and the district judge correctly entered summary judgment in their favor.

The deliberate-indifference claim against Lieutenant Cichanowicz and Nurse McLean, however, is another matter. "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain,"* and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Perez v. Fenoglio,* 792 F.3d 768, 777–78 (7th Cir. 2015) (emphasis added); *see also McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010); *Grieveson v. Ander-*

*son*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer,*491 F.3d 710, 715–16 (7th Cir. 2007). Here, a jury reasonably could find that Cichanowicz and McLean exhibited deliberate indifference by delaying Lewis's treatment for approximately one and a half hours—the time that passed between their learning of Lewis's condition and Dr. Joseph's directive prompting action—thus causing Lewis unnecessary suffering.

Rather than provide a sensible explanation for their inaction, Cichanowicz and McLean blame Lewis for the delay. They assert in their brief that it is irrelevant whether McLean should have known that Lewis was unable to follow commands because she was "assessing and responding to the circumstances as they unfolded." We reject this characterization of the evidence. By contending that they were entitled to do nothing because Lewis failed to comply with their orders (a shift in their characterization of the evidence in the district court, where they insisted that Lewis bore responsibility because he "refused" to comply) Cichanowicz and McLean are asking us to construe the evidence *against* Lewis rather than in his favor and thus attempting to turn summary judgment on its head. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("We must … construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

Construed in the light most favorable to Lewis, the evidence at summary judgment shows that Lewis experienced severe back pain from 5:15 a.m. until after he received a morphine injection at the hospital approximately 4 hours later; that he told Cichanowicz and McLean around 6:00 a.m.; that his back pain was severe and that he could not reach the cell

door; and that he started sobbing and begged Cichanowicz and McLean for help after they had told him that he would not receive treatment unless he came to the door to be restrained. Yet Cichanowicz did nothing to help Lewis, and McLean likewise did nothing until Shannon-Sharpe's involvement prompted her to call Dr. Joseph. Their failure to act is all the more puzzling given the indication in McLean's treatment notes that, 30 minutes after visiting Lewis, Cichanowicz called McLean to tell her that he had watched recorded video from Lewis's cell and had confirmed that he had been sitting motionless on his bed since 5:15 a.m. Neither of these defendants has acknowledged this video or their apparent conversation about it, and certainly they do not suggest that what Cichanowicz saw on the video reinforced their purported belief that Lewis could get to the door and was stubbornly refusing to do so. This evidence, when construed in Lewis's favor, does not square with the defendants' insistence on appeal that they were working with Lewis and attempting to assist him given his inability to comply with their demands on account of his crippling pain.

Furthermore, these two defendants have never explained why Sergeant Primmer's report to Cichanowicz and Shannon-Sharpe that Lewis was prone on the floor prompted Shannon-Sharpe, a supervising officer who held the same rank as Cichanowicz, to spring into action while Cichanowicz continued to do nothing. In their declarations, Cichanowicz and McLean both aver that they did not believe Lewis needed emergency assistance, but a jury reasonably could disbelieve them given Dr. Joseph's unequivocal opinion that Lewis should be taken to the emergency room and the disparity

between Cichanowicz's inaction and the initiative demonstrated by Shannon-Sharpe. Moreover, Cichanowicz has never stated that his inaction was based on any medical opinion expressed by McLean, and McLean has offered no reason why she didn't call Dr. Joseph until an hour and a half after her first encounter with Lewis. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (explaining, when analyzing deliberate-indifference claim against nurse, that "a nurse confronted with an inappropriate or questionable practice should not simply defer to that practice, but rather has a professional obligation to the patient to take appropriate action, whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority" (internal quotation marks omitted)). Viewing the facts in the light most favorable to Lewis, Cichanowicz and McLean encountered an inmate in severe distress, sobbing in pain and complaining that he was unable to move, and did, literally, nothing. Indeed, had Sergeant Primmer not reported his own observations to Shannon-Sharpe, it is unclear if McLean and Cichanowicz would have assisted Lewis at all. *See Liefer*, 491 F.3d at 716 (upholding a jury's finding that prison employees had violated the Eighth Amendment by delaying treatment for an inmate's chest pain and causing him "six extra hours of pain and dangerously elevated blood pressure for no good reason").

In short, the disputed facts surrounding McLean and Cichanowicz's state of mind preclude a grant of summary judgment in their favor on Lewis's claim of deliberate indifference to a serious medical need. On remand, the district court may also wish to reassess its decision to relinquish jurisdiction over the medical-malpractice claim against McLean and

consider recruiting counsel to represent Lewis. *See Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (explaining that district court should appoint counsel in potentially complex medical case, especially one that has advanced to discovery or trial); *Perez*, 792 F.3d at 785; *Greeno*, 414 F.3d at 658.

On a closing note, we are troubled by the failure to preserve the video from Lewis's cell recorded between 5:15 a.m. (when he sat up) and 7:12 a.m. (when the clips provided by the defendants begin). *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting that courts have imposed spoliation sanctions "where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent"); *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."). The missing recordings, which McLean's treatment notes tell us that Cichanowicz viewed at some point, could help Lewis at trial by corroborating his statements that he was immobilized for two hours and that he cried and begged for help when talking to Cichanowicz and McLean. And yet there is no explanation in the record why the defendants did not preserve this video but did preserve the six minutes of favorable video showing Lewis being removed from his cell. Konichek's declaration suggests that the recordings are stored for approximately twenty days before being erased, so whoever preserved the video of the cell extraction likewise could have saved the video covering the preceding 3 hours. On remand, the district court should consider reopening discovery so that Lewis—possibly aided by recruited coun-

sel—can successfully depose Cichanowicz and McLean as to their state of mind and explore more fully whether additional recordings exist and, if not, why more video was not preserved.

Finally, we reject the defendants' claim that they are entitled to qualified immunity from Lewis's suit. Qualified immunity protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established … constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Viewing the facts in the light most favorable to Lewis, we ask whether the defendants violated a clearly established constitutional right. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (establishing that *Saucier*'s two-step sequence is not mandatory). In establishing whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Instead, we ask whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* It has long been clear that deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. As for whether Cichanowicz and McLean's delay in assisting Lewis ran afoul of that clearly established right, as the discussion above makes clear, when viewed in the light most favorable to Lewis, his factual allegations could demonstrate a constitutional violation. Thus, the defendants are not entitled to immunity from suit.

### III.

The district court's judgment is VACATED to the extent that it grants summary judgment on the deliberate-indifference claim against Cichanowicz and McLean. On remand, the district court should consider whether to reinstate the medical-malpractice claim against McLean. The remainder of the judgment is AFFIRMED, and the case is REMANDED to the district court for further proceedings.

MANION, *Circuit Judge*, concurring. Because the court's opinion correctly applies our controlling precedent, I join it in full. A reasonable juror could conclude from the record presented that Lieutenant Cichanowicz and Nurse McLean delayed Lewis's treatment by more than an hour when they knew that he was in severe pain. Such a juror could infer deliberate indifference because both defendants were aware that the video feed from Lewis's cell showed that he had not moved since 5:15 a.m., but they still chose to do nothing rather than move the extraction process along. Under our case law, that would constitute deliberate indifference.

I write separately to make two points. First, I don't read the court's opinion as being contingent on the length of the delay the defendants caused. On another set of facts, an hour or so delay of treatment for a similar condition may not be enough to establish deliberate indifference. The particular facts of this case—namely that Cichanowicz and McLean appear to have confirmed that Lewis was suffering severe pain via the video feed—are what permit Lewis to survive summary judgment. Because a jury could view these facts as establishing the reckless state of mind necessary for liability, the court is correct to send this case to trial.

Second, and more broadly, although I think the court correctly applies controlling precedent, this case is a striking example of how far we have departed from the text of the Eighth Amendment. We should not forget that the Amendment prohibits the imposition of "cruel and unusual punishment." The deliberate indifference standard is at best tangentially related to the text. It seems quite unlikely to me that a prisoner who

was taken to the hospital and entirely cured within five hours of suffering pain has endured anything "cruel and unusual" in the context of the prison system. We should eventually return to faithfully applying the text of the Constitution.

With these reservations, I concur.