NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 14, 2018[*]
Decided June 14, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-3500

| | |
|---|---|
| MARK A. SHANNON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 1:15-cv-0807-WTL-TAB |
| REBECCA TRIVETT, TONI JORDAN, and | |
| MURAT POLAR, | William T. Lawrence, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Mark Shannon filed a complaint under 42 U.S.C. § 1983 against three medical professionals who treated his injuries when he was an inmate at Plainfield Correctional Facility in Indiana. He alleged that they were deliberately indifferent to his medical needs because they provided inadequate care before and after his orthopedic surgery.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

The district court granted the defendants' motion for summary judgment because the record showed that the defendants exercised reasonable medical judgment. We affirm.

We recount the facts in the manner most favorable to Shannon, noting disputes where relevant. *Lewis v. McLean*, 864 F.3d 556, 558 (7th Cir. 2017). While Shannon was in the laundry room at Plainfield Correctional Facility in July 2014, a washing machine door slammed down on his hand. He experienced pain and a "popping" sensation at the base of his thumb. Nurse Rebecca Trivett took Shannon to the infirmary. She ordered that Shannon be referred to a doctor as soon as possible because he likely needed an X-ray. She wrapped his hand in an ace bandage, gave him ice compresses, and prescribed pain medication.

Another nurse scheduled Shannon for an X-ray with an outside radiologist five days later. The radiologist reported that there was no fracture or dislocation. But by the end of the month, Shannon's thumb was still swollen and he had trouble bending it. Dr. Murat Polar, a physician at Plainfield, referred Shannon to Dr. Glock, an orthopedist. Dr. Glock ordered another round of X-rays, which were reviewed by the same radiologist; this time the imaging showed a fracture at the base of Shannon's thumb. Dr. Glock concluded that Shannon needed surgery, and he performed the procedure at the end of August. After surgery, Dr. Glock prescribed ibuprofen and Norco for inflammation and pain, and an antibiotic to prevent infection. He also prescribed a polar-ice unit, which is a continuous cold therapy machine used to prevent swelling.

Shannon returned to the prison infirmary after his surgery in the evening on August 29. The nurse on duty, Toni Jordan, called Dr. Polar for post-surgery instructions. Dr. Polar adopted the surgeon's suggestions to prescribe Norco, polar ice treatment, and an antibiotic. Dr. Polar specified that Shannon should be treated in the infirmary. Shannon protested. He had been in the hospital and then at the prison infirmary for almost 24 hours. He said that he wanted to go back to his unit to eat. Jordan said that he needed to stay in the infirmary, where there was no food available at that time.

Shannon and Jordan had an argument that he describes as "heated" because the nurse threatened to cancel his medication and leave him in pain if he did not stay. Jordan called Dr. Polar to ask how to proceed. Dr. Polar told Jordan to advise Shannon on the risks to his health if he refused treatment in the infirmary. Jordan did so, and Shannon repeated his request to go to his unit. Jordan called Dr. Polar again, and he

ordered ice compresses to replace the ice machine. Dr. Polar explains the substitution was necessary because there was no outlet near Shannon's bunk where he could plug in the machine. (Shannon disagrees and provided an affidavit from another inmate in the unit who was able to plug in the same or a similar machine in the unit, though he did not specify that he was able to do so near his bunk.) Shannon's prescriptions for Norco and the antibiotic were not filled. Jordan says that Shannon refused them, and that he signed a refusal form (which is not in the record), but Shannon asserts that he did not refuse treatment. He merely wanted to go back to his unit to eat and get his pills there. It is undisputed that Shannon then left the infirmary.

Two days later, Shannon submitted a health-care request form because he had experienced excruciating pain and swelling in his hand since the surgery. The following day, Shannon returned to the infirmary, where he received his ice therapy and was given Norco and antibiotics. He was discharged from the infirmary the next day. Dr. Polar and Jordan do not dispute that Shannon was discharged with prescriptions for the ice machine and Norco for use outside the infirmary.

On appeal Shannon first maintains that a reasonable jury could find that Trivett was deliberately indifferent to his medical needs because she did not call an ambulance immediately after he injured his hand. But the record establishes that Trivett used her medical judgment to keep him comfortable while he waited for a physician consultation and an X-ray. Shannon argues that Trivett violated an Indiana Department of Corrections Health Care Service Directive requiring that if it is "unclear" whether an inmate needs emergency treatment, urgent care should be provided immediately. However, Shannon does not establish that Trivett's treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). And even if Trivett did violate a policy, that alone would not support an inference that she knew that the circumstances were unreasonably dangerous to Shannon or otherwise in violation of the Eighth Amendment. See *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017).

Next, Shannon argues that Dr. Polar and Jordan were not entitled to summary judgment because they maliciously discontinued his ice therapy and medications as punishment for his refusal to stay in the infirmary. He disputes that his surgeon ordered him to receive treatment in the infirmary. But Shannon's unsupported assertion that his surgeon, Dr. Glock, did not order him to stay in the infirmary is immaterial. The

medical records submitted by the defendants reflect that Dr. Glock intended for Shannon to use the ice machine under observation: his post-operative orders stated the machine should be used in the hospital's post-anesthesia care unit, and his instructions after a follow-up visit specified that the machine should be used in the infirmary. But even if Dr. Glock did not order Shannon to receive his treatment in the infirmary where he could be monitored, Dr. Polar was allowed to modify or revise Dr. Glock's orders if those changes were the result of his independent medical judgment. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); see also *Lloyd v. Moats*, 2017 WL 6728519, at *3 (7th Cir. Dec. 29, 2017) ("As long as [the doctor] used medical judgment … he was free to devise his own treatment plan.").

Shannon argues that he refused housing, not treatment, and that the defendants evinced their deliberate indifference when they disallowed his prescribed treatments outside of the infirmary, only to allow them days later. But Shannon's argument implies that he has a right to dictate the terms of his treatment, and he does not. Under the Eighth Amendment, an inmate "is not entitled to demand specific care … [he] is entitled to reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Dr. Polar and Jordan tried to accommodate Shannon's choice to go to his unit by providing Tylenol and ice compresses. Shannon provides only his opinion, unsupported by any admissible evidence, that these measures were not reasonable. True, the medical providers later allowed him to receive prescription drugs and the ice unit outside the infirmary. But Shannon has not shown that the changes in the orders were "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." See *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). The evidence is insufficient to permit a jury to find that the defendants knew of and disregarded a substantial risk of serious harm to Shannon. See *Harper v. Santos*, 847 F.3d 923, 928 (7th Cir.), *cert. denied*, 138 S. Ct. 394 (2017).

Last, we note that in their brief the appellees request that, although we granted Shannon leave to proceed in forma pauperis on appeal, we now order him to submit copies of his trust fund account for the six months preceding his notice of appeal, filed on September 20, 2016. See 28 U.S.C. § 1915(a)(2). Shannon provided a statement from a later time period, April to October 2017, though he had requested one as early as October 2016. In the past we have noted that prisoners have "limited control over the processing of their inmate trust-fund withdrawals," *Thomas v. Butts*, 745 F.3d 309, 313 (7th Cir. 2014), and we assume that it is similarly difficult for prisoners to direct officials to print and send a trust fund account statement from the appropriate dates.

Regardless, we are convinced from Shannon's filings that he has no income, and so we agree with the district court that there was no initial filing fee to collect because we do so only "when funds exist." 28 U.S.C. § 1915(b)(1). The appellees' interest in our collection of filing fees is unclear, but if they wish to contest a prisoner's in forma pauperis status, they should provide some reason to believe that the prisoner is not entitled to it. Further, they should express their disagreement not in their brief, but by opposing the IFP petition or moving for reconsideration of an order granting it.

AFFIRMED