NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2021[*]
Decided September 3, 2021

*Before*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1847

| | |
|---|---|
| RONALD WILLIAMS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:17-CV-376-MAB |
| STEVEN B. DUNCAN and JOHN COE, *Defendants-Appellees*. | Mark A. Beatty, *Magistrate Judge*. |

## O R D E R

Ronald Williams, an Illinois prisoner, sued the medical director and the former warden of the Lawrence Correctional Center under 42 U.S.C. § 1983 for allegedly delaying surgical treatment for his glaucoma and refusing to give him appropriate

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

shoes for his bunion. The district court entered summary judgment for the defendants. Because the court correctly concluded that no reasonable juror could find that either defendant was deliberately indifferent to Williams's conditions, we affirm.

On May 26, 2015, Williams saw the prison's optometrist about his glaucoma. Because of high pressure from built-up fluid in Williams's right eye, the optometrist submitted a request, which he marked "non-urgent," to send Williams to an eye clinic. On June 2, the medical director, Dr. John Coe, had the request reviewed by a colleague, and the referral was approved.

Two days later, Williams filed an emergency grievance because he had not been to the eye clinic and could not see with his right eye. The warden (at the time), Steven Duncan, determined on June 9 that the grievance was not an emergency. (When he reviewed the grievance again on August 14 under ordinary procedures, Duncan denied it because, by that point, Williams had visited the clinic.) Williams made the same complaints to Duncan in person and showed Duncan that his right eye was pointing in a different direction from his left.

On June 12, prison staff scheduled Williams for a June 29 appointment at the eye clinic. A clinic optometrist recommended that Williams be "seen urgently by a glaucoma specialist." Dr. Coe requested collegial approval for a referral and received it the next morning (June 30). The specialist saw Williams on Thursday, July 2, and recommended surgery "ASAP." The following Monday, Dr. Coe and the prison optometrist requested approval for the surgery, which was given the next day. On July 8, prison staff attempted to schedule the surgery, but the scheduler at the eye clinic was unavailable until the following week. Williams received the surgery on July 28, but he still has seriously limited vision in his right eye. One of the clinic's doctors told him that "if [he] got there sooner that they could have … saved [his] eye."

Williams also has a bunion, so he has obtained special shoes from prison medical staff throughout his incarceration. At a January 2014 appointment, Williams asked Dr. Coe for a new pair, and Dr. Coe ordered him extra-wide shoes, but Williams never got them. Williams visited Dr. Coe again two months later for a wart on his foot, and Dr. Coe ordered him extra-wide "diabetic shoes" that would not irritate the wart. Williams received those shoes a few weeks later but, he asserts, they did not fit, did not support his bunion, and did not allow him to exercise. When he saw Dr. Coe again that September to remove the wart, Dr. Coe ordered Williams a pair of soft shoes, which a nurse noted fit him well. Yet Williams continued to complain about the style and fit of his shoes to prison medical staff. Each time, they examined the shoes he had to

determine they were well-fitting and appropriate and, if not, ordered him new ones. Williams did not complain to Dr. Coe again until about a year later, when Dr. Coe noted that Williams's shoes were "in good shape and fit fine," and he did not need new ones.

Williams sued Duncan, Dr. Coe, and other prison staff members under § 1983 for violating his rights under the Eighth Amendment. Around the same time, he asked the district court to recruit counsel for him because he did not have regular access to legal-research resources or the means to hire an attorney. The court screened the complaint, *see* 28 U.S.C. § 1915A(a), and determined that Williams stated deliberate-indifference claims against Duncan and Dr. Coe for delaying his eye care and depriving him of proper shoes. Because Duncan played no role in Williams's foot care, the court limited that claim against him to an official-capacity claim for injunctive relief.

The district court also directed Williams to refile his motion for recruited counsel. When he did, he added that his impaired vision made it hard for him to read and write. The court denied the motion because Williams's eyesight had not yet impaired his ability to litigate—his filings had been legible and well-written—and he was otherwise capable of pursuing his legally and factually simple claims.

Duncan then moved for summary judgment on exhaustion grounds. Meanwhile, Williams filed another motion for counsel. This time, the district court recruited counsel because the case was at a more advanced stage, and Williams was still having vision problems. The court later denied Duncan's exhaustion-based motion.

Next, the defendants separately moved for summary judgment on the merits. Before Williams's responses were due, however, his counsel moved to withdraw. The district court held a hearing at which counsel explained his irreconcilable differences with Williams. (Counsel had concerns about opposing the summary-judgment motions, citing Rule 11 of the Federal Rules of Civil Procedure and Rule 3.1 of the Illinois Supreme Court Rules.) The court warned Williams that he would not "necessarily get another attorney," but when Williams insisted that he would not accept counsel's advice, the court allowed counsel to withdraw.

After Williams filed responses pro se, the district court granted the defendants' summary-judgment motions. The court explained that Williams had not shown that either defendant knew his glaucoma required urgent treatment before his second appointment at the eye clinic or that either was responsible for any delay of his surgery. As for his bunion, Williams had not offered evidence that Dr. Coe departed from accepted medical practice when he gave him extra-wide shoes. And because Williams

did not show that he had a medical need for different shoes, the court also entered judgment on the claim for injunctive relief.

On appeal, Williams first challenges the decision on his claim that the defendants were deliberately indifferent to his glaucoma by delaying his initial appointment at the eye clinic and, later, his surgery. He argues that, because Dr. Coe had access to his medical records and Duncan saw his eye, each knew that he urgently needed care but did not ensure that he received it promptly.

For his claim to withstand summary judgment, Williams needed evidence that he had an objectively serious medical condition and that the defendants were aware of, yet disregarded, a substantial risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

His glaucoma is indisputably serious, but Williams did not raise a genuine issue of material fact about whether Dr. Coe unlawfully delayed his visit to the eye clinic or his surgery. True, a delay in care can constitute deliberate indifference. *See Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017). But even if Williams needed treatment sooner, he lacks evidence that Dr. Coe was aware of that need and disregarded it. *See Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). Rather, the prison's optometrist had conveyed that Williams's initial referral to the clinic was not urgent, so there is no evidence that Dr. Coe was deliberately indifferent by not seeing to an immediate appointment. Further, Dr. Coe ensured that Williams's surgery was approved just a few days after the glaucoma specialist recommended it. As for the week-long delay in scheduling the surgery, there is no evidence that Dr. Coe was even aware of it. *See Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (prison doctor not deliberately indifferent when he was unaware of delay caused by other staff). And there is no dispute that the delay originated with the surgeon's staff, not the prison's medical team.

Neither was Duncan, the warden, deliberately indifferent to Williams's glaucoma by treating his grievance as a non-emergency despite his visible eye problem. As a non-medical official, Duncan was entitled to rely on the judgment of Williams's physicians. *See Giles v. Godinez*, 914 F.3d 1040, 1049–50 (7th Cir. 2019). When Duncan first reviewed the grievance, the doctors had recently examined Williams's eye and approved a non-urgent visit to the eye clinic, and when the grievance came back to Duncan, Williams had gotten the relief the grievance requested. Duncan had no reason to question the prison physicians' decisions and was not deliberately indifferent by allowing the physicians to manage Williams's care. *See Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006).

As to the bunion, Williams argues that a material issue of fact—whether Dr. Coe gave him shoes that fit and in which he could exercise—precludes summary judgment for the medical director. But Williams offered no evidence that Dr. Coe's shoe selections amounted to "blatantly inappropriate" treatment decisions. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). Although Williams preferred a different or more comfortable style of shoe, the Constitution entitled him only to adequate care. *See Johnson*, 433 F.3d at 1013. And the record shows that, when Williams complained about his shoes, Dr. Coe and other medical staff ensured that his shoes fit and were the correct width and style for his bunion.

Next, Williams argues that the district court erred by not recruiting counsel for him sooner. We review the denial of the first requests to recruit counsel for abuse of discretion. *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). Here, the court applied the proper standard and reasonably concluded that counsel was unnecessary because Williams has a college degree, his claims were fairly simple, and, despite his limited vision, his filings were well written and legible. *See id.* at 655, 658–59. Further, Williams has not shown that the denial of recruited counsel early in the case worked any prejudice, as he must to prevail on appeal. *See id.* at 659.

Williams further contends that the district court erred by allowing his lawyer to withdraw and not recruiting a new one—decisions we also review for abuse of discretion. *See Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018) (appointment of counsel); *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 816 (7th Cir. 2017) (withdrawal). The court appropriately allowed Williams's counsel to withdraw after confirming at a hearing that he and Williams had irreconcilable differences. *See Parker*, 845 F.3d at 816. And Williams (having been warned of the likely outcome) never asked for a new attorney, so the court did not err by not recruiting a second one on its own. *See Wilborn*, 881 F.3d at 1008–09. Relatedly, Williams contends that his recruited counsel was inadequate. We will not assess counsel's effectiveness, however, because defective performance by counsel does not provide grounds for reversal in civil matters. *See Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

We have considered the remaining arguments that Williams presents in his brief, and none has merit.

AFFIRMED